```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF KANSAS


JEREMY COWEN,

                    Plaintiff,

vs.                                     Case No. 12-1011-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.
```

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On July 21, 2010, administrative law judge (ALJ) Alison K. Brookins issued her decision (R. at 9-23). Plaintiff alleges that he has been disabled since December 20, 2005 (R. at 9). Plaintiff is insured for disability insurance benefits through December 31, 2010 (R. at 11). At step one, the ALJ found that

plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 11). At step two, the ALJ found that plaintiff had the following severe combination of impairments: mild cervico-thoracic scoliosis; musculoligamentous lumbar strain; hypertension; gastroesophageal reflux disease; possible fibromyalgia; and obesity (R. at 11). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 13). After determining plaintiff's RFC (R. at 15), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 21). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 21-22). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 22-23).

**III. Are the ALJ's RFC findings supported by substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the

ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence.  Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.

Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ made the following RFC findings for the plaintiff:

> …the claimant has the residual functional capacity to perform light work…in that he can lift 20 pounds occasionally and 10 pounds frequently; can stand and/or walk about 6 hours out of an 8 hour workday, with normal breaks; can sit for about 6 hours out of an 8 hour workday, with normal breaks; and push and/or pull to same weights except: the claimant can only occasionally climb, balance, stoop, kneel, crouch or crawl.

(R. at 15). As noted above, plaintiff alleged disability beginning December 20, 2005. In making her RFC findings, the ALJ gave significant weight to the opinion of Dr. Fluter, who performed a consultative examination on March 28, 2006 (R. at 445-449), and to the opinion of Dr. Murati, who performed a consultative examination on September 25, 2006 (R. at 899-903). Both physicians opined that plaintiff could perform light work, with postural limitations (R. at 448, 903). The ALJ found that their opinions were well supported and consistent with the longitudinal record (R. at 17-18), including an MRI of the lumbar spine performed on January 19, 2006, which was normal (R. at 16, 409), and a nerve conduction study on January 17, 2006 which was also normal (R. at 16, 415). Dr. Stein indicated that an MRI scan on the lumbar spine was negative (R. at 426, 430). The ALJ also noted that Dr. Stein reported that an EMG

and nerve conduction study on March 6, 2006 was within normal limits, and there was no evidence of neuropathy, plexopathy or radiculopathy (R. at 16, 426, 435).  As noted by the ALJ, Dr. Stein indicated on March 6, 2006 that there was no structural, pathological basis to provide medical restrictions on the activities of the plaintiff, and he was given a full release (R. at 16-17, 426).

Plaintiff argues that the ALJ should have given greater weight to the opinions of Dr. Kueser, plaintiff's treating physician.  Dr. Kueser provided a number of RFC assessments indicating that plaintiff had limitations which would preclude plaintiff from working an 8-hour workday (R. at 506-507, Dec. 7, 2007; R. at 937-938, Aug. 15, 2008; R. at 480-481, Feb. 20, 2009; R. at 964, 966, 968-969, 971-972, Feb. 24, 2010).  The ALJ noted Dr. Kueser's long-term treatment relationship, but found that Dr. Kueser's opinions relied quite heavily on plaintiff's subjective reports of complaints, impairments and limitations even though they were contrary to numerous tests which were essentially normal.  The ALJ found that Dr. Kueser's treatment notes do not support his opinions, and noted that no other medical provider had determined that plaintiff is as limited as alleged by Dr. Kueser (R. at 18).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395

F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The ALJ could reasonably rely on: (1) the consultative examinations by Dr. Murati and Dr. Fluter, (2) the negative or normal MRI, EMG, and nerve conduction testing, (3) and the finding of Dr. Stein that there is no structural or pathological basis to restrict the activities of the plaintiff, to discount the opinion of Dr. Kueser, and find that plaintiff is capable of performing light work with postural restrictions.  The ALJ's well-written opinion provided an excellent summary of the medical evidence, and set forth clear and detailed reasons, including citations to the medical evidence, for discounting the opinions of Dr. Kueser, and giving greater weight to the opinions of Dr. Murati and Dr. Fluter.  The court finds that substantial evidence supports the physical RFC findings of the ALJ.

    Plaintiff also argues that the ALJ failed to assess any mental limitations despite the opinions of Peggy Massoth, a treating therapist, who opined that plaintiff has a number of

9

moderate, marked and extreme mental limitations (R. at 934-935, July 29, 2008; R. at 881-882, Feb. 8, 2010). The ALJ gave little weight to the therapist's opinions, but instead gave greater weight to the opinions of state agency consultants regarding plaintiff's mental limitations (R. at 18-19).

These consultants included a mental status examination report by Dr. Mintz, who examined plaintiff on March 25, 2006 (R. at 438-440), and concluded that plaintiff gets along well with others, is able to understand simple and complex instructions, but also found that plaintiff's concentration capacity appears somewhat diminished by pain symptoms (R. at 439). On April 4, 2006, Dr. Cohen, a non-examining medical source, opined that plaintiff's only functional limitation was a mild limitation in maintaining concentration, persistence, or pace (R. at 451, 461, 463). On April 16, 2009, Dr. Fantz, a non-examining medical source, made a similar finding after reviewing the record (R. at 674, 684, 686). On June 30, 2009, Dr. Warrender affirmed the opinion of Dr. Fantz (R. at 848).

In his decision, the ALJ cited to specific evidence in the treatment notes to question the limitations set forth by Ms. Massoth (R. at 19). This included findings by Ms. Massoth on March 5, 2009 that plaintiff had no impairment in cognition/attention, no impairment in memory, no impairment in thought content/perceptions, and no occupational and social

10

impairment (R. at 19, 853-854).  Furthermore, as noted by the ALJ (R. at 19), four other medical sources did not find that plaintiff had severe mental limitations that had a significant impact on his ability to work.  The ALJ's well-written opinion provided an excellent summary of the medical evidence, and set forth clear and detailed reasons, including citations to the medical evidence, for discounting the opinions of Ms. Massoth, and giving greater weight to the opinions of four other medical sources in finding that plaintiff did not have significant mental limitations that should have been included in plaintiff's RFC.  The court therefore finds that substantial evidence supports the mental RFC findings of the ALJ.

**IV. Are the ALJ's credibility findings supported by substantial evidence?**

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d

12

903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence.  See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).  The court can only review the sufficiency of the evidence.  Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo.  Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

In her decision, the ALJ provided a well-written, thorough and detailed discussion of plaintiff's credibility, noting numerous inconsistent statements and statements not supported by the medical evidence, with citations to the record (R. at 20-21).  Furthermore, as noted by the ALJ, plaintiff's allegations of limitations are inconsistent with many medical tests and with numerous medical opinions, as set forth above.  After reviewing the record, the court finds that the ALJ's credibility determination is linked to specific findings of fact fairly derived from the record, and will therefore be affirmed by the court.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 9TH day of January 2013, Topeka, Kansas.

<u>s/ Sam A. Crow</u>
Sam A. Crow, U.S. District Senior Judge